No. 9643.

SCOTTON v. MANN ET UX.

HUSBAND AND WIFE.—*Contract.*—*Parties.*—Where a husband contracted in his own name for the benefit of his wife, both might join as plaintiffs under the code of 1852, sections 4 and 8, to enforce it.

SAME.—*Verdict.*—In a joint suit by husband and wife on a contract made by the husband, containing covenants, some of which are for the separate benefit of each, the jury may find separate damages in favor of each.

JUDGMENT.—*Supreme Court.*—If a judgment do not follow the verdict, the error can be saved for correction in the Supreme Court by a specific motion for the proper modification only, but not by a motion embracing more.

From the Grant Circuit Court.

*T. G. Smith, I. Van Devanter, J. W. Lacey* and *W. Van Devanter*, for appellant.

*B. M. Cobb, J. C. Branyan, C. W. Watkins* and *M. L. Spencer*, for appellees.

BICKNELL, C. C.—John J. Scotton and George W. Mann entered into a written contract as follows:

" This is to certify that in consideration of a quitclaim deed,

made on the 17th day of January, 1876, by George W. Mann and Catharine, his wife, to John J. Scotton, for the following real estate in Huntington county, Indiana." Here two tracts of land are particularly described, one of them containing 100 acres and the other 32 acres, and the contract proceeds thus: " In part of the consideration of said quitclaim deed as aforesaid, the undersigned John J. Scotton hereby agrees to give the privilege to the said Mann to sell the above described real estate, or any part thereof, at any time within one year from the date hereof, and also the undersigned retains the same privilege, and that when the sum of $3,200, with the interest thereon at 10 per cent. from January 17th, 1876, shall be paid, the said Mann shall have the remainder of the sum for which he or myself shall sell said above described real estate, or any part thereof. And in case the said Mann or myself shall sell any part of said real estate, for a sum sufficient to pay said sum of money, then the undersigned John J. Scotton agrees, for himself, heirs and assigns, to deed the remainder to Catharine Mann; also a debt due to the undersigned from George W. Mann is to be paid out of the sum for which said land shall sell, or any part thereof. And as a part of the above covenants, and upon the sale of said real estate, or any part thereof, the said Mann agrees to give quiet and peaceable possession of the same to the purchaser. In witness we have hereunto set our hands and seals this 18th day of January, 1876. JOHN J. SCOTTON.
" GEORGE W. MANN."

In April, 1880, Mann and wife brought this suit against Scotton upon the foregoing contract, alleging in their amended complaint that on the 1st day of February, 1876, Scotton sold said 100 acres to Arthur Lakey for $4,000, more than enough to pay all the indebtedness mentioned in said contract; that thereby $800, the surplus after paying said indebtedness, became due from Scotton to the plaintiff George W. Mann; that after said sale said Scotton conveyed to his son Oliver said 32 acres, which was worth $2,000, whereby the plaintiffs are

damaged $3,000, for which they demand judgment and all proper relief.

A demurrer to the amended complaint, for want of facts sufficient, etc., was overruled, and this is one of the errors assigned by the appellant.

The objection made to the complaint is that it shows no joint cause of action; that under the contract the right to the surplus, after paying the indebtedness, belonged to George W. Mann, and the right to the 32 acres belonged to Catharine Mann; that either of them might sue separately, but both can not sue jointly.

In general, where two sue, the complaint must show a joint cause of action; if it fails to do so there are too many plaintiffs, and that defect is good cause of demurrer for want of facts sufficient to constitute a cause of action. *Neal* v. *State, ex rel.,* 49 Ind. 51; Busk. Prac. 167. But the complaint in this case did state a cause of action upon which the husband and wife had a right to sue jointly, namely, in reference to the 32 acres of land. The husband had a right to sue on the privity of contract, the contract being made with him for the benefit of his wife. 2 R. S. 1876, p. 34, section 4. In such a case the husband always had a right to join his wife as plaintiff, she having the meritorious cause of action, and under the code of 1852, which governs this case, the husband must be joined where his wife is a party, except that in certain cases she may sue alone. 2 R. S. 1876, p. 36, section 8. The demurrer to the amended complaint was, therefore, rightly overruled. *Board, etc.,* v. *Slatter,* 52 Ind. 171.

The defendant filed an answer in two paragraphs:

1. The general denial.

2. Admitting the contract and the sale of the 100 acres for $3,700, and alleging that he had made a conditional sale of the 32 acres to Oliver Scotton for $900, which sale had been rescinded; that the individual debt due from George Mann, mentioned in the contract sued on, was about $800, which, together with $2\frac{1}{2}$ per cent. commission on the sale of the 100

acres, amounting to $92.50, and cash paid out for executing conveyance papers and other expenses, equalled the value of the 32 acres, and that the proceeds of the 100 acres did not reimburse him for the $3,200, mentioned in the contract, and the interest thereon.

The defendant filed also a cross complaint, averring that the plaintiffs held said lands subject to a mortgage, upon the foreclosure of which they were bought by Elizabeth Nix, and by her conveyed to the defendant for $3,200, which he paid; that this purchase by defendant was made at the request of plaintiffs, and for the purpose of giving them time to pay off said indebtedness, and that, as a part of the arrangement, the quitclaim deed and the contract mentioned in the complaint were made, and that the excess of the proceeds of the sales contemplated in the contract over the indebtedness and interest mentioned in the contract, after deducting therefrom a reasonable compensation for the time and services of defendant, and his cash outlays, was to be paid to said plaintiffs. The cross complaint then repeats the allegations of the second paragraph of the answer as to the sales of the land, and states the account as follows:

Plaintiffs are indebted to defendant for amount paid
  to Mrs. Nix . . . . . . . . . . . . . . . . . $3,200.00
Interest on same one year at ten per cent. . . . . 320.00
Individual indebtedness . . . . . . . . . . . . 800.00

                                      4,320.00
For commission and services . . . . . . . . . 92.50

  Total . . . . . . . . . . . . . . . . . . . . $4,412.50
They are entitled to credit for amount received on
  sale of 100 acres to Lakey . . . . . . . . . 3,700.00

Leaving yet due defendant . . . . . . . . . . $ 712.50

The prayer of the cross complaint is that defendant may have judgment for $712.50, and that the deed to him for the thirty-two acres, together with the defeasance contained in

the contract, be declared a mortgage; that said mortgage be foreclosed, etc.

At this stage of the proceedings the defendant made an affidavit that the plaintiffs had an undue influence over the citizens of Huntington county, where the suit was pending, and took a change of venue to Grant county.

The plaintiffs replied jointly in denial of the second paragraph of the answer, and they answered jointly in denial of the cross complaint. The issues were tried by a jury, who returned a verdict and an answer to an interrogatory submitted on behalf of the plaintiffs, as follows:

"We, the jury, find for the plaintiffs, and that there is due George Mann the sum of $300, and we find there is due Catharine Mann the sum of $1,400, and we find that the title of the defendant be quieted to the land, the thirty-two acres in complaint described."

"Question 1. Had John J. Scotton conveyed away by deed all the land described in the contract filed with the complaint before the commencement of this suit? Ans. Yes."

The jury also returned answers to interrogatories submitted on behalf of defendants as follows:

"Question 1. Was any demand made of the defendant before the commencement of this suit, and after the land was sold and paid for to an amount sufficient to pay the debts due, under the contract, to the defendant? Ans. Yes.

"Question 2. What amount was due upon the debts mentioned in the contract sued on, at the time the land sold under the contract was paid for? Ans. $3,200.

"Question 3. What amount was received for the land? Ans. $3,700.

"Question 4. What was the value, at the time the land sold was paid for, of the land mentioned in the contract remaining unsold? Ans. $1,076.92; interest, $323.09."

The defendant filed a motion for a *venire de novo*, alleging eleven reasons therefor; this motion was overruled. The defendant filed a motion for judgment in his favor upon the ver-

dict and special findings, because, 1st. All the issues in the cause are found in favor of the defendant; 2d. The only matters found against the defendant are outside of the issues. This motion was overruled.

The defendant then moved for a new trial, and this motion was overruled; and a motion by defendant in arrest of judgment was also overruled. The court then rendered separate judgments, one in favor of George W. Mann for $300 and costs, and the other in favor of Catharine Mann for $1,400 and costs. The defendant at the time objected to the entering of each of these judgments, that it was not within the issues, nor authorized by the issues, but the court overruled the objections, and defendant excepted. The defendant appealed. He assigns as errors:

1. Overruling the demurrer to the amended complaint.

2. Overruling the motion for a *venire de novo*.

3. Overruling the motion for judgment upon the verdict and special findings.

4. Overruling the motion for a new trial.

5. Overruling the motion in arrest of judgment.

6. Rendering the separate judgment in favor of George W. Mann over the appellant's objection.

7. Rendering the separate judgment in favor of Catharine Mann over the appellants' objection.

The first of these alleged errors has already been considered. As to the second error assigned, the question as to a *venire de novo* is thus presented by the appellants in their brief: "The point presented by the motion is that the verdict is not responsive, in that it finds upon separate causes of action in favor of the appellees separately, but finds nothing upon any joint cause of action; the appellees may not in their complaint state a cause of action in favor of themselves jointly, and upon the trial prove and recover upon separate causes of action in their favor separately."

Where the facts stated in a complaint by two or more do not show a joint cause of action a demurrer will be sustained.

*Debolt* v. *Carter*, 31 Ind. 355: Under the contract sued on in this case, we think the jury had a right to find separate damages for George Mann and Catharine Mann. See the code of 1852, sec. 368 ; *Fitzgerald* v. *Genter*, 26 Ind. 238 ; *Hubbell* v. *Woolf*, 15 Ind. 204 ; *Draper* v. *Vanhorn*, 12 Ind. 352 ; *Berkshire* v. *Shultz*, 25 Ind. 523 ; *Douglass* v. *Howland*, 11 Ind. 554. The motion for a *venire de novo* was rightly overruled.

As to the third error assigned, it is true that, the jury having returned a verdict that the defendant should be quieted in his title " to the land, the thirty-two acres in the complaint described," the judgment should have followed the verdict in this respect, which, however, it fails to do. But the motion made by the defendant was too broad ; instead of demanding that the judgment be modified by adding thereto a clause quieting the defendant's title, etc., the defendant moved for judgment in his favor, that the plaintiffs take nothing by their complaint, and that the defendant's title be quieted, and that he recover his costs. There was no error in overruling this motion. It follows from what has already been said that there was no error in overruling the motion in arrest of judgment, or rendering separate judgments in favor of the plaintiffs.

The only remaining error assigned is overruling the motion for a new trial. The reasons alleged for a new trial are the following :

1st. That the court erred in admitting in evidence the deed from the sheriff of Huntington county to Elizabeth Nix for the real estate in the complaint described.

2. That the verdict is not sustained by sufficient evidence.

3. That the special findings of the jury in answer to interrogatories are not sustained by sufficient evidence.

4. That the verdict of the jury is contrary to the evidence.

5. That the special findings of the jury in answer to interrogatories are contrary to the evidence.

6. That the verdict of the jury is contrary to law.

7. That the damages assessed by the jury are excessive.

The first of these reasons for a new trial is not discussed

by the appellant in his brief, and is, therefore, regarded as waived.

As to the second reason alleged for a new trial, to wit, that the verdict was not sustained by sufficient evidence. The deed from Scotton and wife to Lakey for the 100 acres of land was a warranty deed for the sum of $3,700, dated February 1st, 1876. The deed from Scotton and wife to Oliver Scotton for the 32 acres, was a warranty deed for $900, dated February 15th, 1876.

Arthur Lakey testified that he bought the 100 acre tract from John Scotton for $3,700. He further testified as follows: John Scotton told me at the time that the amount for which he was selling the land to me would pay all the debts that Mann owed him and about $300 more; the 32 acre tract is worth $40 per acre; Scotton came to me to get me to buy the land; I told him I would not buy without the consent of Mr. Mann; Mann and I afterwards went to Scotton and Scotton told us that he had been figuring on the indebtedness of Mann to him, and that my payments would pay off the whole indebtedness and about $300 over; Mann asked Scotton about the individual indebtedness of himself to Scotton over and above the $3,200 paid by Scotton for the land, and Scotton told him that my payments would pay everything, including the individual indebtedness; I bought the land on payments, giving my notes for $1,200 due in one year, $1,000 in two years, $1,000 in three years, and $500 in four years; the first payment of $1,200 drew interest at ten per cent., the other payments at 6 per cent.

Catharine Mann, one of the plaintiffs, testified: Scotton was married to my sister; he came to our house one morning a few days after I executed a deed to him for the land; he told me I would not be sold out; he said there would be $1,800 or $1,900 coming to me, and that my son had told him a certain farm could be bought for $1,600, and he would buy it for me if I said so; I never consented to any sale of the 32 acres by Scotton; he has never paid me anything; the first

conversation referred to in my testimony was just before Mr. Scotton sold the land to Mr. Lakey, and after I had signed the deed to Scotton.

George W. Mann, one of the plaintiffs, testified: A week or two after the sale of the 100 acres to Lakey I asked Scotton to deed back the 32 acre tract; when we talked about selling the 100 acres, I asked Scotton if the sale would produce enough to pay off all claims he had on me; he said there would be enough and $300 over; he said the individual debt I owed him was $273; I think that is what the debt was; the 32 acre tract was worth $40 per acre.

Philip White testified: I told Scotton that it was rumored among the neighbors that he had cheated Mann out of his land; he replied he had an agreement in writing with Mann and proposed to live up to it, and that the neighbors need not make themselves so damned busy; the 32 acre tract was worth $37.50 per acre.

John Lakey testified: The value of the 32 acres in 1876 was $40 per acre.

. James Branyan testified that the Lakey notes were paid, and that after the payment he, for the plaintiffs, demanded of Scotton a conveyance of the 32 acres of land, and asked for the money due on the contract at the same time.

The contract was fully proved as stated in the complaint.

The testimony, of which the foregoing is a brief summary, in connection with the other evidence in the cause, tended to support the verdict of the jury. There was some evidence tending to support the defence, but in such cases the court will not undertake to decide upon the preponderance of the testimony.

Where there is testimony tending to support the verdict, this court can not disturb the verdict, even though the preponderance of the evidence may seem to be against it. *Davis v. Nicholson*, 81 Ind. 183. Therefore, the second, third, fourth, fifth and sixth reasons for a new trial were not sufficient.

The seventh reason for a new trial, to wit, that the damages

were excessive, can not be sustained. The damages do not appear to be excessive. There was no error in overruling the motion for a new trial, and the judgment should be affirmed.

PER CURIAM.—It is therefore ordered, upon the foregoing opinion, that the judgment of the court below be and it is hereby in all things affirmed, at the costs of the appellant.

Opinion filed at the November term, 1882.

Petition for a rehearing overruled at the May term, 1883.